IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

J.A.,[1]

        Plaintiff,

vs.                                      Case No. 20-1290-SAC

ANDREW M. SAUL,
Commissioner of Social Security
Administration,

        Defendant.

**MEMORANDUM AND ORDER**

    This is an action appealing the denial of Social Security disability and supplemental security income benefits. Plaintiff filed her applications for benefits on March 14, 2018, alleging that she has been disabled since March 13, 2018. The administrative law judge (ALJ) conducted a hearing on November 21, 2019, considered the evidence, and decided on January 8, 2020 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

I. <u>Standards of review</u>

    To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42

---

[1] The initials are used to protect privacy interests.

1

U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305, U.S. 197, 229 (1938)). This standard is "not high," but it is "'more than a mere scintilla.'" Id., (quoting Consolidated Edison, 305 U.S. at 229). It does not require a preponderance of the evidence. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). "Evidence is insubstantial if it is

overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).

The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). The court reviews "only the sufficiency of the evidence, not its weight." Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. The ALJ's decision (Tr. 15-28).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 16-17). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an

3

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id. In this case, the ALJ decided plaintiff's application should be denied at the fourth step of the evaluation process. The ALJ also determined that there were other light work jobs in the economy that plaintiff was capable of performing.

The ALJ made the following specific findings in his decision. First, plaintiff last met the insured status requirements for Social Security benefits through June 30, 2020. Second, plaintiff has not engaged in substantial gainful activity since March 13, 2018. Third, plaintiff has the following severe impairments: total left knee replacement; total right knee replacement; degenerative disc disease of the cervical spine; obesity; major

4

depressive disorder; generalized anxiety disorder; and posttraumatic stress disorder.

Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity (RFC): to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b); to apply commonsense understanding to carry out detailed but uninvolved instructions in the performance of simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements involving only simple, work-related decisions with few, if any work place changes; and to frequently interact with supervisors, coworkers, and the public.

Based upon the testimony of a vocational expert, the ALJ determined that plaintiff could perform her past relevant work as a cashier, as well as other jobs existing in the national economy, such as router, collator operator and retail price marker.

III. The court shall reverse the denial of benefits and remand for further proceedings.

A. The RFC found by the ALJ does not support the ALJ's conclusion that plaintiff can perform her past work as a cashier.

Plaintiff's arguments before the court center upon her mental health issues, not physical problems. All of her arguments are presented under the main contention that the ALJ's decision to deny benefits is not based upon substantial evidence.

5

As already mentioned, plaintiff has the burden of showing that she is incapable of doing her past relevant work. Plaintiff has supported this claim with, inter alia, her testimony and written statements or forms from two treating doctors, Dr. Carrie Stineman and Dr. Andrew Segraves. Dr. Stineman completed a form (Tr. 472-73) indicating that plaintiff has bipolar 2 disorder, panic disorder, and generalized anxiety disorder. The form states that plaintiff would have drowsiness and lack of focus as side effects from medications, and that plaintiff would miss more than four workdays a month and likely be "off task" 25% of the time. Dr. Stineman checked boxes on the form indicating that plaintiff was moderately limited in several categories of understanding and memory including the ability to understand, remember, and carry out very short and simple instructions; markedly limited in several categories of sustained concentration and persistence; extremely limited in the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace; and moderately or markedly limited in several categories of social interaction and adaptation.

Dr. Segraves' form (Tr. 556-57) listed plaintiff as having major depressive disorder and generalized anxiety disorder. He did not list plaintiff as experiencing side effects from medication, but his form reflected that plaintiff would miss more than four workdays a month and be "off task" 25% of the time. He

6

checked boxes on the form indicating that plaintiff was moderately limited in understanding and remembering detailed instructions, but otherwise mildly limited; moderately limited in most categories of concentration and persistence, but mildly limited in carrying out very short and simple instructions and markedly limited in the ability to complete a normal workday and workweek; and moderately limited in all categories of social interaction and adaption.

It is noteworthy as well that, although they did not conclude that plaintiff was disabled from work, the state agency physicians who examined the records available to them concluded that plaintiff could engage in simple tasks with limited social contact (Tr. 87, 122) and that plaintiff had the ability, attention and concentration to carry out "at least simple 1-2 step tasks" (Tr. 91, 126).[2] They also recommended limited social and interpersonal contact because of plaintiff's anxiety. (Tr. 92, 127).

This evidence as evaluated by the ALJ establishes plaintiff's inability to perform her past relevant work. While the ALJ concluded that plaintiff could perform her past job as a cashier,[3] a cashier's job, as generally performed, requires a reasoning level of three according to the Dictionary of Occupational Titles (DOT)

---

[2] They listed plaintiff with depressive, bipolar and related disorders and anxiety and obsessive-compulsive disorders. (Tr. 85, 120).
[3] Plaintiff's job history report indicates that she worked as a cashier four hours a day, two days per week from February 2016 to February 2018. (Tr. 269).

7

in the section cited by the ALJ (211.462-010). The DOT describes reasoning level-three jobs as applying:

> commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT, Appendix C, Section III. In contrast, the RFC in this case limited plaintiff to uninvolved instructions in the performance of simple, routine, and repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes.

The Tenth Circuit has held that the RFC the ALJ found in this case does not support a level-three reasoning position and that in such a situation the ALJ may not rely upon a vocational expert's testimony as substantial evidence. See Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)(mental limitation to simple and routine work tasks is incompatible with jobs requiring a reasoning level of three). Defendant does not argue that the cashier's job as plaintiff performed it required a lower reasoning level.[4] Therefore, the court finds that plaintiff has fulfilled her burden at step four and the ALJ's conclusion to the contrary is not supported by substantial evidence viewed in the light of Tenth Circuit precedent.

B. <u>Substantial evidence does not support the ALJ's conclusion that plaintiff can perform other employment on a sustained basis.</u>

---

[4] Defendant argues that the record supports a finding that plaintiff can perform reasoning level-three jobs. Doc. No. 17, p. 18. The ALJ, however, did not make that finding in the RFC he formulated.

8

The question becomes whether the Secretary has fulfilled his burden to show that plaintiff has retained the RFC to do other work that exists in the national economy. See Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996). The court has reviewed the evidence cited by the ALJ and concludes that it is overwhelmed by other evidence which contradicts the ALJ's finding that plaintiff can perform the jobs listed in the ALJ's decision.

In his order, the ALJ referenced PHQ-9 scores that reflected moderate to moderately severe depression.[5] (Tr. 22). These scores, however, are not linked to specific work-related limitations. Nor does either side argue that the scores are considered sufficient by themselves to determine disability or non-disability.

The ALJ also noted that plaintiff's healthcare providers described her depression as "mild" or "moderate" on several occasions and that once Dr. Segraves noted that plaintiff's depression was in partial remission. These ratings, however, were recorded by doctors who have supported plaintiff's disability claims. Dr. Segraves and Stineman each rendered an opinion that plaintiff had impairments which were incompatible with regular employment. And Dr. Andrea Ely, who appears to be a general practice physician, stated that plaintiff's disability application

---

[5] A PHQ-9 (Patient Health Questionnaire 9) assessment is a nine-item survey which asks a patient to evaluate symptoms or criteria of depression. See Farden v. Berryhill, 2019 WL 245465 *4 (D.N.M. 1/17/2019)(describing the scale); Long v. Colvin, 2017 WL 2889367 *1 (E.D.La. 7/7/2017)(same).

9

was indicated although plaintiff was doing "a lot better." (Tr. 484).

The court has reviewed the medical records in this matter. The records often show that plaintiff has concentration, thought and speech patterns within normal limits. And plaintiff has not been hospitalized for mental health treatment or had other aggressive treatment. The records further show that plaintiff's mood is often low but variable, with improvement sometimes reported with changes in medication. Her anxiety is frequently reported to be significant and sometimes acute. It is reflected in tearfulness, agitation and irritability. Every doctor who has reviewed or evaluated plaintiff's mental condition has concluded that plaintiff has serious limitations that do not support the RFC stated by the ALJ. The ALJ suggests that the records show that plaintiff has made improvement which postdates the doctors' opinions. (Tr. 23-25). For example, the ALJ cited plaintiff's comment on March 25, 2019 that her anxiety had been "way better controlled." (Tr. 23). He does not cite evidence, however, showing that plaintiff's improvement is sustained as opposed to episodic. The court's review of the records indicates that the periods of improvement were not sustained.

Reliance upon episodic improvement does not amount to substantial evidence of a capacity for sustained employment as the following cases hold. In Bauer v. Astrue, 532 F.3d 606 (7th Cir.

2008), the claimant was diagnosed as bipolar and given a variety of antipsychotic drugs. Her treating psychiatrist and treating psychologist both made findings which indicated that she could not keep a full-time job. The ALJ did not credit these opinions because either the claimant or her treating physicians made a number of hopeful remarks suggesting improvement in the treatment notes. The Seventh Circuit remanded for further proceedings stating:

> A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job . . . That is likely to be the situation of a person who has bipolar disorder that responds erratically to treatment.

Id. at 609.

In Oslin v. Barnhart, 69 Fed.Appx. 942 (10th Cir. 2003), the claimant claimed disability from depression, bipolar disorder and hepatitis B with liver disease. The court reversed a denial of benefits stating that progress notes showed changing symptoms and no sustained periods of improved functioning, and that the ALJ failed to assess whether plaintiff's changing symptoms permitted him to perform work on a regular, consistent, or sustained basis. Id. at 946.

11

There are similar holdings in other circuit court cases. E.g., Stacey v. Commissioner of Social Security Administration, 799 Fed.Appx. 7, 10 (2nd Cir. 2020)(isolated descriptions of improvement are no basis for finding capability to work or to minimize a treating physician's opinion of disability); Estrella v. Berryhill, 925 F.3d 90, 97 (2d Cir. 2019) (alteration omitted) (quoting Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014))("Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working"); Schink v. Commissioner of Social Security, 935 F.3d 1245, 1268 (11th Cir. 2019)(considering episodic nature of claimant's mental impairment, citation of good days as evidence of no disability does not support a finding that claimant did not suffer from a severe impairment or that his doctors' treatment opinions are inconsistent with the record); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001)(mental illness has an unpredictable course, symptom-free periods and brief remissions are generally of uncertain duration); Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001)(periodic improvement for a person suffering from severe panic attacks, anxiety, and depression doesn't show that the person's impairments no longer seriously affect her functional capacity). In sum, the

court does not believe the ALJ's references to episodes of improvement in this record provide substantial evidence that plaintiff can perform regular employment without prohibitive absences.

The ALJ also qualifiedly supported his findings by noting plaintiff's activities of daily living. He stated that plaintiff's "range of activity is not entirely consistent with a finding of disability." (Tr. 23). He commented that plaintiff can live by herself or with others, take care of pets (a cat), manage her personal care, prepare (simple) meals, clean, do laundry, watch television, exercise, go outside, ride in a car, drive, shop, manage her finances, spend time with others, play video games, talk on the phone, and perform side jobs with her brother for cash. (Tr. 23). Further, the ALJ referenced plaintiff's mother's report of plaintiff's activities of daily living. (Tr. 23). This does not amount to substantial evidence as other similar cases have found. In Oslin, the court held that a similar list of daily activities did not establish that the claimant, who suffered from depression and bipolar disorder, could work on a consistent basis. 69 Fed.Appx. at 948, citing Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993)(sporadic performance of [household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity"); see also King v. Barnhart, 114 Fed.Appx. 968, 972 (10th Cir. 2004)(ALJ improperly discounted

13

treating doctor's opinion that claimant's depression and bipolar disorder were disabling by citing claimant's housework, cooking, shopping, watching television, visiting family and other activities).

Finally, as already noted, the ALJ must evaluate plaintiff's ability to work on a sustained basis. See Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)(RFC reflects the capacity for sustained performance of work). "Occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995). The ALJ has cited proof that plaintiff has worked sporadically. (Tr. 23). This proof is not substantial evidence that plaintiff is capable of maintaining full-time gainful employment on a sustained basis.

In summary, the opinions from plaintiff's treating doctors and the state agency physicians support a greater level of disability than what was found by the ALJ. This evidence overwhelms that cited by the ALJ to support his step five findings. The evidence relied upon by the ALJ does not support the conclusion that plaintiff has the capacity to perform a regular job on a sustained basis. That plaintiff has not been hospitalized and has had episodes of improved mood and functioning does not show that plaintiff can steadily perform the jobs listed by the ALJ. Plaintiff's activities of daily living, as detailed by plaintiff

and her mother, also fail to prove plaintiff's capacity to maintain a regular job. Finally, the references to "mild" or "moderate" disorder or to "partial remission" are not related to work activities and fail to show that plaintiff has the capacity to accomplish the jobs listed by the ALJ without excessive absenteeism. In conclusion, because the ALJ's decision does not cite substantial evidence in support of his findings at step five of the analysis, the court shall remand this case for additional proceedings.

IV. Conclusion

In conclusion, judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) reversing the Commissioner's decision and remanding the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED.**

Dated this 7th day of July 2021, at Topeka, Kansas.

s/Sam A. Crow
U.S. District Senior Judge